

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-25-00043-CR

---

ASHTON DURE CLARK, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 8th District Court
Hopkins County, Texas
Trial Court No. 2128739

---

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

The trial court revoked Ashton Dure Clark's community supervision and sentenced him to ten years' incarceration for the offense of assault on a public servant.[1]  On appeal, he claims the trial court denied him his due process right to represent himself in the revocation proceeding. *See Faretta v. California*, 422 U.S. 806 (1975).  Because we find that Clark waived his request to represent himself, we overrule his point of error.  We affirm the trial court's judgment.

## I.     Proceedings in the Trial Court

Clark was on community supervision[2] in Hopkins County for assault on a public servant. The State moved for a revocation of his supervision.  He was arrested in North Carolina[3] and returned to Hopkins County around January 28, 2025.  On January 29, 2025, he appeared before the trial court, without an attorney.  We quote extensively from that pretrial hearing:

> THE COURT:  We are on the record with Cause Number 2128739, styled The State of Texas versus Ashton Dure -- it's Dure, correct?
>
> THE DEFENDANT:  Correct, sir.
>
> THE COURT:  And, Mr. Clark, you are here now on the State's motion to revoke a previously suspended sentence, and I think you just recently arrived at our jail within the last few days; am I right?
>
> THE DEFENDANT:  Correct, sir.
>
> THE COURT:  What I saw on here on your indigence worksheet is that you indicated you were not requesting a court appointed attorney.  That typically means because you intend to hire your own.  Is that correct?

---

[1]*See* TEX. PENAL CODE ANN. § 22.01(b)(1) (Supp.).

[2]*See* TEX. CODE CRIM. PROC. ANN. art. 42A.053.

[3]Several of the State's allegations alleged conduct that occurred in North Carolina.

2

THE DEFENDANT:  Negative, sir.

THE COURT:  Oh, negative, sir?

THE DEFENDANT:  Yes, sir.

THE COURT:  You need an attorney, whether you hire one, or if you are unable to do that, I'll appoint one.  But the State wants to revoke your suspended sentence and send you to the penitentiary, and they have a variety of probation violations.

THE DEFENDANT:  That's correct, sir.  I understand.

THE COURT:  Okay.  And you're entitled to a hearing on that.

THE DEFENDANT:  Yes, sir.

THE COURT:  But you need an attorney.  This is not misdemeanor court, we're not in traffic court.  This is felony court.

THE DEFENDANT:  Yes, sir.

THE COURT:  And you need an attorney.  So what are you going to do about that?

THE DEFENDANT:  I don't need an attorney, sir.

THE COURT:  You do need an attorney.  That's not -- I'm not suggesting that.  I'm telling you, you need an attorney.

Do you have the ability to hire an attorney?

THE DEFENDANT:  Negative, sir.

THE COURT:  Then I'm going to appoint you an attorney.

THE DEFENDANT:  Then that means I have to pay for an attorney.

THE COURT:  No, you don't.  If you're indigent and can't afford it, I won't assess any funds for you to pay for him, at all.

3

THE DEFENDANT: He's going to work for him, sir. No, sir.

THE COURT: No, he doesn't work with him. I'm appointing you an attorney. You've got to have an attorney.

THE DEFENDANT: Yes, sir.

THE COURT: Okay. And what I'm going to do is set this for a hearing, and I'm going to give you some paperwork on that in just a moment, okay?

THE DEFENDANT: Sir, I would like the information for this case, all the evidence against me, sir.

THE COURT: You're absolutely entitled, and let me tell you how you get that: Through the attorney.

THE DEFENDANT: He's not going to give it to me, sir.

THE COURT: Of course he is. Of course he is. Absolutely he or she, as the case may be, absolutely. In fact, Article 39.14(f) says you don't get a copy of it. The only thing you get a copy of, if it exists, is a written statement that you've made. If there is no written statement that you've made, then you can look at it, but you don't actually get to keep it. That's the law.

THE DEFENDANT: Exactly, sir. I won't get a copy of it.

THE COURT: I'm sorry?

THE DEFENDANT: Exactly, sir. I won't get a copy of it.

THE COURT: That's right. That's the law.

THE DEFENDANT: Exactly. Yes, sir. So that's what I'm saying. I would not like to have an attorney because I want the information.

THE COURT: By the way, you don't get that. If you don't have an attorney, you can still look at it. An attorney is going to show it to you, Mr. Clark. That's how this is going to work. You absolutely have the right to review all of the State's evidence against you. And you're going to do that in the privacy of an attorney-client communication. That's how that's going to happen.

THE DEFENDANT: What I'm saying, sir, is that we already tried that, and that didn't work, sir.

THE COURT: I have no idea what you're talking about.

THE DEFENDANT: I understand, sir.

THE COURT: So I'm telling you, I'm appointing you an attorney, and I'm going to set it for a hearing, and then we'll see about the State's motion at that time, all right?

THE DEFENDANT: Sounds good, sir.

That same morning, the trial court appointed Bryan White to represent Clark. White represented Clark at the March 10, 2025, hearing to revoke community supervision. The trial court revoked Clark's community supervision and sentenced him to ten years' incarceration.

## II.    Right to Self-Representation

"The Sixth and Fourteenth Amendments to the United States Constitution guarantee that a person brought to trial in any state or federal court may dispense with counsel and make his own defense." *Moore v. State*, 999 S.W.2d 385, 396 (Tex. Crim. App. 1999) (citing *Faretta*, 422 U.S. at 818–820). "However, the right to self-representation does not attach until it has been clearly and unequivocally asserted." *Funderburg v. State*, 717 S.W.2d 637, 642 (Tex. Crim. App. 1986) (citing *Faretta*, 422 U.S. at 835). "If a defendant properly asserts his right to self-representation, then the record must show that he knowingly and intelligently waived his right to counsel after being made aware of the dangers and disadvantages of self-representation." *Id.* (citing *Faretta*, 422 U.S. at 835). However, "[a] defendant can waive his *Faretta* rights" to represent himself once it has been asserted. *McKaskle v. Wiggins*, 465 U.S. 168, 182 (1984).

5

### III.    Clark Waived His Right to Self-Representation

Assuming without deciding that Clark's invocation, on January 29, of his *Faretta* rights was sufficient and unequivocal, he waived that right five weeks later when, at the next hearing on March 10, 2025, he proceeded with the representation of White.[4]  At the plea on the motion to revoke Clark's community supervision, White actively represented Clark, and Clark made no mention of his prior assertion of his *Faretta* rights.  Clark voiced no complaint regarding White's representation.

"[A] *pro se* defendant's solicitation of or acquiescence in certain types of participation by counsel substantially undermines later protestations that counsel interfered unacceptably."  *Id.* "A waiver may be found if it reasonably appears to the court that defendant has abandoned his initial request to represent himself."  *Funderburg*, 717 S.W.2d at 642 (quoting *Brown v. Wainwright*, 655 F.2d 607, 611 (5th Cir. 1982)).

By acquiescing in White's representation, Clark "waive[d] his *Faretta* rights." *McKaskle*, 465 U.S. at 182.  We overrule Clark's point of error.

---

[4]White was clearly prepared for the hearing.  He thoroughly cross-examined the State's first witness, a deputy from North Carolina who arrested Clark, as well as Clark's Hopkins County probation officer, and he questioned whether the North Carolina criminal statute alleged was sufficiently similar to Texas offenses.

## IV. Conclusion[5]

We affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:     August 14, 2025
Date Decided:       September 10, 2025

Do Not Publish

---

[5]At the conclusion of his appellate brief, Clark quotes from *Funderburg* by stating, "A waiver of the right to self-representation after being invoked is 'not subject to the same stringent standards as the waiver of the right to counsel.'" *Funderburg*, 717 S.W.2d at 642. He then posits, "But, shouldn't it be?" He presents no argument or authority for this rhetorical question. "We decline to make appellant's arguments for him." *Lane v. State*, 933 S.W.2d 504, 511 n.7 (Tex. Crim. App. 1996).